## WILLIAM MERRIAM *vs.* NATHANIEL MITCHELL.

Where one, through his own error, mistake or negligence, causes the arrest and imprisonment of an innocent man, who has given no occasion for suspicion by his own misconduct; the assurance of the complainant, however strong it may be, that the accused was guilty of the crime imputed to him, is not sufficient evidence of probable cause for such arrest.

The post office record of mails received and sent away is admissible evidence in an action for malicious prosecution, brought by a deputy postmaster against an agent of the Post Office department, for causing the arrest and imprisonment of the plaintiff on a charge for taking a package from the mail; although such record be in the handwriting of the accused.

In an action for malicious prosecution, the jury may rightly infer malice from want of probable cause.

A verdict will not be set aside merely because irrelevant, or immaterial evidence has been erroneously admitted on the trial.

THIS was an action for a *malicious prosecution.*  In one count in the declaration, there was an averment, that the plaintiff had been committed to prison in consequence of the malicious prosecution, and that he had sustained special damage by being injured thereby in his business, as a merchant and trader, and that in consequence of his arrest and imprisonment by the defendant's acts, his property had been attached and sold at a great sacrifice.

The action was tried at the *December Term* of the S. J. Court, 1834, before *Emery J.*, but from the very great length of the report of the Judge, covering one hundred and sixty-two large and closely written pages, and from other causes, the case was not prepared for argument at the next law term, and stood over until *July Term*, 1836.  Several questions of law were reserved on the report of the Judge for the consideration of the Court.  The following motion was filed by the counsel for the defendant at the term when the trial was had, and the questions arising thereon were argued with the questions on the report.

And now after verdict and before judgment, the said *Mitchell*, being present in Court, moves the Court here, that the verdict aforesaid may be set aside and a new trial granted for the following reasons, to wit.

1st. Because the said verdict is rendered against the facts proved in the case.

2d. Because the jury in rendering their verdict on the points submitted to them by the Court, could not agree to finding a fact proved by legal and uncontradicted documentary evidence; said fact having a tendency to support the defence; whereas the said jury have found that the defendant did fraudulently and designedly conceal from the magistrates the fact, that a staple was gone from the mail-bag, without any evidence whatever having been laid before them, that said *Mitchell* at the time of the examination had noticed the fact, or even knew that a staple was gone from the mail-bag.

3d. Because evidence was adduced to prove, that some of the friendly creditors of *Merriam* called upon him by suit to pay to them certain sums of money due and owing to them, and that afterwards, by consent of parties, the personal property of said *Merriam* which was attached, was sold, as the plaintiff alleged, at a loss; which said testimony was introduced, although objected to by the defendant, for the purpose of enhancing the damages, if any should be recovered.

4th. Because it is manifest, on comparing the testimony laid before the jury with the answers which the jury have given to the questions put by the Court, that the jury in rendering their verdict must have been influenced, however unknown to themselves, by prejudice against the defendant and his cause.

5th. Because the damages given in this case are excessive and not warranted by the evidence in the case, or the facts complained of.

6th. Because during the trial and while the cause was actually in hearing, one of the jurymen, *Benning Pease*, did receive privately a slip of paper from a friend of the plaintiff, *Francis Fletcher*, 2d. and after reading the same, wrote upon it and returned it to that friend; who again wrote and passed it back to the juryman, and this proceeding was more than once repeated in Court.

7th. Because since the evidence was closed in this case, the defendant has discovered new and important evidence, tending to prove clearly and unquestionably, that a man in a gig did leave *Camden* on the morning or early part of the day of the 28th of *Sept.* 1833, pass the cross-road from *Camden* to *Warren* in ac-

Merriam *v.* Mitchell.

cordance with the evidence introduced by the defendant, and this under suspicious circumstances.

8th. Because evidence was admitted to show the property of the defendant for the purpose of enhancing the damages, and the jury have evidently proceeded upon the principle of giving vindictive damages.

9th. Because the sum for which the verdict is rendered, to wit, the sum of $1666, proves that they must have chalked for it, or made an average.

10th. Because the defendant is informed and verily believes, that he shall be able to prove, that some of the jurymen not only formed an opinion against the defendant before the evidence was out, but actually expressed an opinion against the defendant.

The report of the Judge commences with the following statement.

"To support the issue on the part of the plaintiff, he proved the complaint of the defendant against the plaintiff, as set forth in the writ; that he was arrested thereon; carried before magistrates; ordered to recognize in 5000 dollars to appear at the Circuit Court of the *United States;* and not finding sureties was detained a prisoner until the grand jury declined finding the bill of indictment to be true, and that thereupon the defendant was discharged.

" In order to facilitate the advance of the case, for the purpose of this trial, I directed the jury on the proof before stated, and the evidence hereafter recorded, that there was no probable cause for the prosecution commenced as aforesaid by said *Mitchell* against said *Merriam;* intending to reserve the question for the consideration of the whole Court. And to enable the jury to pronounce whether there was malice on the part of the defendant in that prosecution, and to ascertain what damages the plaintiff had suffered; and with a view to ascertain facts deemed material for the jury to decide; fifteen questions were submitted to them with a request, that as far as they could agree they would answer them. One was, had losses of money and detention of notes occurred on the mail route from *Belfast* to *Thomaston,* previous to complaint to the Post Office Department? The jury could not agree to answer. Another question was, did *Nathaniel*

*Mitchell* receive from the Post Office Department, a commission to examine the mail routes the whole length of the route from *Portland* to *Lubec*, and make investigation upon the whole length of it, accompanied by a petition from individuals in *Belfast* and instructions from the Post Office Department for this purpose, as exhibited in evidence; and did he in pursuance of that commission, and instruction, proceed on that duty from *Belfast* to *Camden* on the 28th day of *September*, 1833? To this the jury could not agree to answer. Another question was this; was the *Bath* decoy package in the mail-bag after the examination at *Lincolnville*? The jury answered it was. Another question submitted was this; was the mail afterward on that day delivered to and opened by *William Merriam*? The jury say it was. Another question submitted was this; was the *Bath* decoy package in the mail-bag at the examination at *Goose River*? The jury say that it was. Another question submitted to them was this; Did *Nathaniel Mitchell* in good faith believe, that the *Bath* decoy package had been withdrawn from the mail-bag by *William Merriam* at the time when he made his complaint to justice *Dillingham*, during the trial before the magistrates, and at the time he testified before the grand jury? To this the jury could not agree to answer. Another question submitted to them was this; how many packages were dropped after the examination at *Northport*, and not restored to the mail-bag before its arrival at *Camden*? The answer is, we say one. Another question submitted to them was this; was it practicable between the time that *Mitchell & Pickard* returned from *Goose River*, on the 28th of *September*, 1833, and the time of the stage passing the Post Office at *Damariscotta Mills*, for a person to go in a gig on the cross road from *Camden* to *Warren*, from the Post Office in *Camden* to the Post Office at *Damariscotta Mills* and there deposit a letter in season to be placed in the mail going that day westward? To this the jury could not agree to answer. Another question submitted to them was this; was it practicable at that time to introduce a package of the size of the *Bath* decoy package into the mail-bag then used on this route from *Belfast* to *Bath*, without unlocking the mail-bag? The jury answer, it was. Another question submitted to them was this; was the said *Mitchell*

actuated by malice, in the commencement and prosecution of the complaint against *William Merriam?* They answer, we say he was. Another question submitted to them was this; was the examination of the mail-bag at *Goose River*, and of the packages therein, conducted by *Mitchell & Pickard* with due and reasonable care and caution, and did they honestly believe that the *Bath* decoy package was not then among the packages in the mail-bag? To this, the jury could not agree to answer. Another question submitted to them was this; did *Nathaniel Mitchell* fraudulently and designedly conceal from the magistrates the information that was given to him by *Mr. Reed,* of the finding of the package of letters to *Mr. Whitney?* The jury, answer, we say he did. Another question submitted to them was this; at what time did the *Bath* decoy package arrive at *Bath,* with the money in it in the mail, and was it abstracted from the mail at any time before, after leaving *Lincolnville?* The jury answer, it arrived in due course of mail, and was not abstracted. Another question submitted to them was this; if the *Bath* package was abstracted from the mail after leaving *Lincolnville,* was it abstracted by *William Merriam?* The jury answer, we say it was not. Another question submitted to them was this; did *Nathaniel Mitchell* fraudulently and designedly conceal from the magistrates the fact, that a staple was gone from the mail-bag? Answer, we say he did.

"The plaintiff offered evidence to prove, that after he was so arrested on the complaint of said *Mitchell* against him, his goods were attached, and afterwards sold by consent; and upon the whole evidence already stated, and hereafter recited, the jury by their verdict found the defendant guilty, and assessed damages for the plaintiff, in the sum of sixteen hundred, and sixty-six dollars."

The whole of the testimony given on the trial, on each side, then follows, and the report concludes thus:

"It is to be recollected, that the plaintiff's counsel, though called on especially to say in the close of his argument, whether he insisted on the evidence in relation to the letter opened by *Mr. Mitchell,* as having any bearing on the case, frankly declared, that he did not, and had not noticed it in his argument. If upon the foregoing evidence offered by the plaintiff under the circumstances before stated; and upon the directions given by the pre-

siding Judge and the verdict of the jury thereon, the full Court should be of opinion, that the action is maintainable, the verdict is to stand; but if any of the evidence admitted ought to have been rejected, unless excluded by what is before stated; or if the directions of the presiding Judge to the jury be erroneous, the verdict is to be set aside and a new trial granted."

The foregoing extracts contain all the instructions, which appear in the report to have been given to the jury.

It is intended to give such facts only from the mass of evidence reported, as are pertinent to the *questions of law*, without any reference to the merits of the controversy, as a question of fact for the jury, or for the consideration of the Court in the exercise of their discretionary power to set aside the verdict.

Complaints had been made to the Postmaster General, that letters containing money had been taken from the mail on the lower route between *Lubec* and *Bath*, in the summer of 1834; and in the month of *September* of that year, the assistant Postmaster General appointed the defendant, then postmaster at *Portland*, agent of the Department to make an investigation. In a letter from the department he was specially instructed in the mode of performing the duties of the agency, and detecting such as might be guilty. One of the modes suggested, was that of preparing and putting a package into the mail containing money, ascertaining that it was in the mail before it reached a post office, and then passing by and examining the mail, when out of sight of the office. Having received notice of his appointment, with the instructions, the defendant proceeded to *Lubec*, and on his return westward arrested one of the postmasters between *Lubec* and *Belfast* for robbing the mail, who pleaded guilty to the charge. On the evening of the 27th of *September*, 1834, the defendant was at *Belfast*, and there with the knowledge and assistance of the postmaster at that place made up, and put into the mail, two packages containing money, one directed to a person at *Bath*, and the other to one at *Wiscasset*. From *Belfast* the defendant, with a gentleman of that place as an assistant, proceeded westward, opened the mail before reaching *Camden*, proceeded past the office, and at a place in the vicinity, called *Goose River*, again opened the mail, returned back to *Camden*, and made

complaint to a justice of the peace, that the plaintiff had taken the *Bath* package from the mail. A warrant was issued, and the plaintiff, then acting as postmaster at *Camden,* as the deputy of *Col. Hall,* postmaster at that place, was arrested and carried before two magistrates. After an examination the plaintiff was bound over by the magistrates to appear at the Circuit Court of the *United States* to be holden at *Wiscasset,* on the first day of *October* following, and in default of obtaining sureties, was committed to prison at *Wiscasset.* The grand jury did not find a bill of indictment against him, and he was discharged, and then brought this suit. On the trial it was proved, that the *Bath* decoy package, as it was denominated, was received by the mail at *Bath* on that day, and delivered to the person to whom it was addressed. It was also proved, that the defendant and his assistant with the stage driver, made on examination of the mail-bag at *Goose River,* west of *Camden* post office, and did not find the *Bath* package. The defendant offered evidence for the purpose of showing, that the *Bath* decoy package, which was alleged in the complaint to have been taken from the mail at *Camden* by the plaintiff, was not in the mail-bag when it was examined at *Goose River,* and that it was sent from *Camden* after the departure of the mail from that office by a different route, and again put into the mail either at the post office at *Damariscotta,* where packages mailed at a neighboring office, where there was no regular conveyance of the mail, were forwarded without being again mailed, before the mail arrived at *Bath,* or was put into the mail before it reached the *Bath* office at some place, where the stage conveying it stopped, through an opening in the mail-bag occasioned by the loss of one of the staples through which the chain passed. There was evidence offered on the part of the plaintiff for the purpose of shewing, that the decoy package could not thus have been put into the *Damariscotta* office or into the mail-bag. The fact, that the decoy package arrived at *Bath* by course of mail was communicated to the defendant at *Wiscasset,* and he afterwards continued his endeavours to have a bill found by the grand jury against the plaintiff.

From the report it appeared that there was before the jury, as evidence offered by the plaintiff, testimony that the defendant

opened a letter taken from the mail at a post office on the route from *Belfast* to *Camden*, addressed to a person, who did not reside at the latter place; also the record or account of mails received at and sent from the *Camden* post office on the day of the arrest, in the handwriting of the plaintiff; also the statement in a deposition, that the deponent had heard, that the defendant had arrested *Col. Hall* for robbing the mail, given by the deponent in answer to a question thus stated in the deposition, " did your hear on Monday, that *Col. Hall* of *Camden* had been arrested by *Mr. Mitchell* for robbing the mail, (objected to by defendant's counsel)." Also testimony, that the personal property of the plaintiff had been attached at the time of the arrest, and afterwards sold by consent of parties on the writs at a loss upon the costs thereof, but the suits were in favor of persons friendly to the plaintiff, one of whom was his mother. And also testimony by the magistrates, before whom the examination of *Merriam* was had, that if the dropping of a package by the defendant, when he opened the mail before it arrived at *Camden*, and which fact had become known to the defendant during the examination, had been communicated to them, that it might have prevented their committing *Merriam* to prison. It did not appear from the report, that the objection made in the deposition to the testimony, as to the arrest of *Col. Hall*, was renewed at the trial. The counsel of the defendant objected to the admission of the other evidence.

The case was very fully argued by *Preble* for the defendant, and by *Sprague* and *G. M. Chase*, for the plaintiff.

*Preble*, for the defendant.

After giving a history of the case, he remarked, that the plaintiff, to make out his case, must among other things prove: first, that the prosecution was commenced by the defendant against the plaintiff without probable cause therefor: and second, that it was done, not from a sense of duty, but from malice on the part of the prosecutor. As actions of this character tend to discourage enforcing the laws, and bringing offenders to justice, they are not to be favoured. *Buller's N. P.* 14. Both these points are clearly to be made out, and if either fail, the action fails with it. 2 *Dane's Ab.* 723. In the *English* practice,

where copies of a case tried can only be had by permission of the Court, the Courts never suffer copies to be taken, that a suit may be instituted, unless in their opinion, there was no probable cause. 3 *Bl. Com.* 126. Within this principle are many cases, such as where a father complained on information from a young daughter, where it was held, that there was probable cause to make the complaint from that information; and the magistrate having bound over the accused, it was also held, that it was the duty of the prosecutor to appear before the grand jury, and it was adjudged that there was probable cause, although it turned out, that the accused was innocent. *Cox* v. *Wirrall, Cro. Ja.* 194. In *Virginia* it has been held, that a commitment by a magistrate is sufficient evidence of probable cause. *Maddox* v. *Jackson*, 4 *Munf.* 462. He did not propose to trouble the Court with a citation of a long list of authorities on this subject. The general rule is laid down by this Court in *Ulmer* v. *Leland*, 1 *Greenl.* 135. The essential foundation of an action of the case for malicious prosecution, is, that the plaintiff has been prosecuted without probable cause. Probable cause, in general, may be understood to be such conduct on the part of the accused, as may induce the Court to infer, that the prosecution was undertaken from public motives. In this case the Court cite with approbation the case, *Smith* v. *McDonald*, 3 *Esp. N. P. Rep.* 7, that where the evidence is such, as should induce a jury to pause, that there is probable cause. But want of probable cause is not enough. The action should not be maintained without rank malice and iniquity, the language of *Ch. J. Holt*, as stated in *Buller's N. P.* 14. Even if express malice be proved, want of probable cause cannot be implied from it; nor can express malice be inferred from want of probable cause. They are distinct, and each must be proved. The principle stated in *Willans* v. *Taylor*, 6 *Bing.* 183, is the true one, that express malice and want of probable cause must both be shown, and must be such, as to satisfy every reasonable man, that the prosecutor had no desire to proceed for any purpose, but merely to injure the accused. True it is, that it has been held, that where the prosecutor knew, that there was no ground for the complaint, that it is evidence of express malice. This is because under such circumstances, the

prosecutor cannot proceed but from bad motives. The belief of the prosecutor is important, and it has been held, that where the complainant testified to the guilt of the accused, and other evidence shew, that he was mistaken, that this was evidence of probable cause. His own belief, that he was prosecuting the guilty, is conclusive evidence, that there could not be malice. This is the principle upon which the cases may be reconciled. Where a man prosecutes, with the knowledge, that there is no cause for it, it must be done from bad motives; and where he really believes that he is doing nothing, but what duty demands of him, this forbids the supposition, that such motives can exist. *Burlingame* v. *Burlingame*, 8 *Cowen*, 141; *Jackson* v. *Burleigh*, 3 *Esp. R.* 311; *Snow* v. *Allen*, 1 *Starkie's N. P. Rep.* 502; 12 *Petersdorf's Ab.* 288; and notes; 9 *East*, 361; 5 *Taunt.* 580. Want of probable cause cannot be implied from express malice. *Cox* v. *Wirrall*, *Cro. Ja.* 194; *Bull. N. P.* 14; 2 *Phil. Ev.* 112. In an action like this, there are but three grounds, on which damages can be recovered. 1. Imprisonment of the person. 2. Damages sustained by the scandal to his character and reputation. 3. To his property in making his defence. These are all the subjects of damages recognized by law. *Bull. N. P.* 14; 2 *Stark. on Ev.* 917; 12 *Petersdorf's Ab. Art. Damage*, and notes.

The first class of objections is to the admission of testimony.

The second, is to the charge of the Judge.

And the third to the conduct of the jury in finding the verdict.

Under the first class of objections are:

1. The admission of the evidence of the proceedings at the *Lincolnville* post office, with respect to opening a letter. This was objected to, as a transaction between other persons, and which had no relevancy to this case. It was admitted, and was seized upon, as evidence that the defendant was wholly regardless of the rights of others, and it had an influence upon the minds of the jury.

2. The admission of the statement of letters received and letters sent away on that day, in *Merriam's* handwriting, against our protestations, is alone a sufficient cause for setting the verdict aside. This is creating testimony in his own favor, after the ar-

rest was made, by his own act. The paper has none of the qualities of a record, and is not more legal or proper evidence, than to have admitted *Merriam* upon the stand to testify in his own case.

3. The admission of the false story, that the defendant had arrested *Col. Hall* for robbing the mail, is so glaringly wrong, that comment is unnecessary. It had a direct tendency to injure the defendant, when the integrity of his motives was in question, as well as to increase the damages by inflaming the minds of the jury. It is difficult to imagine a case, where the admission of hearsay testimony would be more improper.

4. The admission of the testimony in relation to the attachment and sale of the property of the plaintiff was altogether wrong. It was not connected with the transaction, and was no lawful subject of damages, as the authorities before cited on this subject prove. In this case, it was got up for the occasion by his friends.

5. The testimony of the magistrates, who committed *Merriam*, of the effect the dropping of the package at *Lincolnville*, would have had on their minds was improperly admitted. As it was not the decoy package, it ought not to have influenced any mind. But if it had been proper to admit testimony to show that a package had been dropped, it was for the jury, under the instruction of the Court, to determine whether that circumstance ought to have had any effect, and not for the Justices to give their opinion on the subject.

The charge of the Judge is highly objectionable. He ruled at once, that there was not probable cause, thus determining what was the effect of the very voluminous, and in some degree contradictory evidence, and taking from the jury their province of deciding the facts, and drawing inferences from them. It was deciding the whole case, but the single question of damages, instead of stating the law to the jury and leaving them to an unbiassed decision. This decision is taking to the Court the determination of the question, whether the defendant acted from good motives and from a sense of duty, or from malice and revenge. After making this decision he put a string of questions to the jury for them to answer, but the answers were made with the prejudice

upon their minds, which a decision by the Court, that the defend-ant was guilty of the charge, was calculated to produce. But the jury did not answer but a portion of them. If it were proper to put them, they should have been answered. If this practice is to be tolerated, juries may as well be dispensed with.

This course deprives us of the power of knowing upon what legal principles the decision of the Judge was founded, and thus deprives us of the power of excepting to any ruling made in re-lation to the law. We are therefore driven to show, if the course taken was legal, that on no possible construction, which can be given to the evidence, can the action be supported.

There is no dispute here, but that the magistrates after a full hearing bound the defendant over to appear at the Circuit Court. This in itself is evidence of probable cause. There can be no difference, between the conviction of the magistrate, where he has jurisdiction, and the binding over, where he has not. The one has been decided to be evidence of probable cause in *Massa-chusetts*, and the other in *Virginia*. *Whitney* v. *Peckham*, 15 *Mass. R.* 243; *Maddox* v. *Jackson*, 4 *Munf.* 462; 2 *Stark. Ev.* 913, and notes. The instructions of the Judge were tanta-mount to directing the jury to find a verdict for the plaintiff. He undertook to instruct them, that there was no probable cause, he inferred, that there was malice, and the jury considered, that they were bound by it. He told them to find, as to certain facts, but still that the case was to be given to the plaintiff. Such course in the Judge was illegal, and the verdict should therefore be set aside. Under the objections to the finding of the jury, he argued, that they must have been influenced, by some improper causes in the finding, as they did; that some of the answers were given, not only without evidence, but against the evidence; that others were given without evidence; that they refused to give answers, where they would favour the defendant; and he drew the conclusion, that for these causes the verdict should be set aside.

*Chase*, for the plaintiff.

It is enough to sustain the verdict, if the defendant from any cause has attempted to procure the conviction of the plaintiff without reference to the question, whether he was guilty or not guilty; whether such conduct was occasioned by suggestions

Merriam *v.* Mitchell.

from others, or from unfounded suspicions of his own. It should always be remembered in this case, that the plaintiff was not guilty, and that the defendant on his own complaint arrested and imprisoned an innocent man.

Where there are questions of fact to be settled by the jury, and much testimony on each side, and not easily to be reconciled, the finding of the jury will not be disturbed. *Hammond* v. *Wadhams,* 5 *Mass. R.* 353; *Hall* v. *Huse,* 10 *Mass. R.* 41; *Smith* v. *Brampston,* 2 *Salk.* 644; *Winchel* v. *Latham,* 6 *Cowen,* 682; *Douglass* v. *Tousey,* 2 *Wend.* 352; *Smith* v. *Hicks,* 5 *Wend.* 48; *Fowler* v. *Ætna F. I. Co.* 7 *Cowen,* 270. In penal actions, in cases of libel, and of malicious prosecution, the Courts will give no second chance of success by setting aside a verdict, unless some positive rule of law be violated. *Jarvis* v. *Hathaway,* 3 *Johns. R.* 180; *Farewell* v. *Chaffey,* 1 *Bur.* 54; *Hurtin* v. *Hopkins,* 9 *Johns. R.* 36; *Paddock* v. *Salisbury,* 2 *Cowen,* 811; *Feeter* v. *Whipple,* 8 *Johns. R.* 369; *Woodward* v. *Paine,* 15 *Johns. R.* 493; *Crafts* v. *Plumb,* 11 *Wend.* 143. A verdict will not be set aside, although against the positive testimony of a witness, where circumstances in the evidence tend to lessen the probability, that such testimony is true. *Waite* v. *McNeil,* 7 *Mass. R.* 261; *Blanchard* v. *Colburn,* 16 *Mass. R.* 345; *Harding* v. *Brooks,* 5 *Pick.* 244. If the verdict be against the weight of evidence in actions of tort, it will not be set aside. *Jackson* v. *Loomis,* 12 *Wend.* 27; *Ayer* v. *Bartlett,* 9 *Pick.* 156; *Feeter* v. *Whipple,* 8 *Johns. R.* 369; *Ex parte Baily,* 2 *Cowen,* 479. If a good cause of action be established by unimpeachable testimony, a verdict will not be set aside because some improper testimony has been admitted. *Stiles* v. *Tilford,* 10 *Wend.* 338; *Baker* v. *Briggs,* 8 *Pick.* 122. The fact, that the plaintiff is innocent is in itself sufficient evidence of want of probable cause. 2 *Stark. Ev.* 916, and notes and cases there cited. Probable cause for the arrest is not to be inferred from slight suspicion. 6 *Petersdorf's Ab.* 131; *ibid.* 88, *Art. A.* The omission of the jury to answer some questions put to them is no cause for setting aside the verdict. *Pejepscot Pro.* v. *Nichols,* 1 *Fairf.* 256. The testimony, as to the injury sustained by the plaintiff by the attachment and sale of his

property, was properly admitted. This is alleged in the writ, as special damage. The jury are the proper judges whether the arrest of the plaintiff was the cause of the loss. No improper motives should be imputed to the jury. *Brewer* v. *Inhabitants of Tyringham*, 12 *Pick.* 547. In a case like this, no new trial should be granted on account of excessive damage. *Coleman v. Southwick*, 9 *Johns. R.* 45; *Southwick* v. *Stevens*, 10 *Johns. R.* 443; *Douglas* v. *Tousey*, 2 *Wend.* 352; *Shute* v. *Barrett*, 7 *Pick.* 82; *Thompson* v. *Mussey*, 3 *Greenl.* 305. No new trial should be granted on account of newly discovered evidence merely cumulative. 10 *Wend.* 285; 6 *Greenl.* 479. The condition of the parties is properly to be taken into consideration by the jury in estimating damages. *Tillotson* v. *Cheetham*, 3 *Johns. R.* 55. Merely chalking for damages, without agreeing to be bound by it is no cause for setting aside a verdict. *Dorr* v. *Fenno*, 12 *Pick.* 521; *Winn* v. *Col. Ins. Co. ibid.* 279. He argued, that upon these principles of law, applied to the facts stated in the report, judgment ought to be rendered on the verdict.

*Sprague*, for the plaintiff, said, that he did not dissent from most of the positions of law laid down by the counsel for the defendant, but differed widely in the application of them. To support the action the plaintiff was bound to show, that the prosecution was without probable cause, and with malice. But malice may be inferred, as a fact, by the jury from want of probable cause. The latter is the great and leading ingredient in actions for malicious prosecution. If the finding of the jury in this particular was right, then all the rest follows. He proposed to consider the case under three general divisions, which seemed to him to embrace the whole of it.

1. That as matter of law on the facts found by the jury, there was not probable cause. The facts are to be found by the jury, and thereupon, probable cause, or the want of it, is for the determination of the Court.

2. That the verdict is not so against evidence, that the Court should set it aside.

3. That there was no material evidence admitted, which ought to have been excluded.

Under the first, he stated this general proposition; that where an innocent man has been arrested and imprisoned, who has given no occasion for suspicion by his own misconduct, he has a remedy against some one; against the prosecutor, if he proceeded on groundless suspicion of his own, or against the slanderer, who gave false information justifying an arrest. The supreme law of the land, the constitution of the *United States, art.* 4 of the amendments, protects the citizens from unreasonable seizures of their persons, and forbids the arrest of any one, but upon probable cause. If a man proceed to act in such case on his own carelessness and negligence, he is to suffer, and not the innocent victim of his folly and negligence. The mere belief of the prosecutor, that he is acting honestly is no protection to him. Some people are firm believers in dreams; and would a thrice dreamer that an innocent man had committed a murder, a robbery, or a larceny, be justified for that cause in occasioning his arrest and imprisonment? He dissented entirely from the views of the counsel for the defendant in this part of his law, and believed not only common sense and common justice, but the law of the books, would bear him out in it. 2 *Stark. Ev.* 915; *Roscoe on Ev.* 303. Probable cause must be shewn in defence, if it lies wholly within the complainant's knowledge. 2 *Dane's Ab.* 725. And it must be knowledge and not suspicion.

He said that the jury had found, that the decoy letter had passed in regular course of mail to *Bath*, its place of destination, and was in the mail-bag, when the defendant examined it after it had passed the *Camden* office, and before it had reached any other. The plaintiff was therefore innocent of the crime charged against him. The plaintiff, by his own conduct, had not given the slightest occasion for suspicion. It is the case of the arrest and imprisonment of an innocent and wholly blameless man. The defendant had no information from others justifying his conduct, and must be held accountable for the injury he has inflicted. But the defendant not only arrested an innocent man, but one who had resisted a temptation purposely thrown in his way by the defendant. In the case *Pierce* v. *Pierce,* 3 *Pick.* 299, where the husband had laid a snare to induce his wife to commit adultery, the Court refused to grant a divorce. In this case, if it

be allowable for the defendant to place inducements in the way of others to commit crimes, the law certainly should not permit such conduct to be the occasion of his imprisoning an innocent man with impunity.

It has been said on the other side, that this action is of a description not to be favored, and *Blackstone* has been cited to shew it. The old books do contain some expressions, that actions for malicious prosecution are not to be favored; and that actions for libel and slander should be discouraged. If the loose remarks of old writers ever did correctly express the law of the Courts, the doctrine has long since become obsolete. They are to be treated like all other actions, where the plaintiff must make out his case, or he cannot recover. The cases cited from *Cro. Ja.* and from *Cowen* do not conflict with the positions we assume. The first was where the prosecutor had received false information on which he acted, and if the story told him had been true, the accused was guilty. In such case, if the information was of a description, that a reasonable man, with due care, should believe it, the prosecutor will be excused, and the remedy will be against the slanderer. In the *New-York* case the plaintiff's own misconduct had given occasion for well grounded belief of his guilt. All the cases cited on this point go on the ground of misconduct in the party accused, or wrong information from others. In the case now before the Court, there was not the slightest misconduct on the part of the plaintiff, and the defendant was not mislead by false information from others. No case has been found to show, that under such circumstances the accused is without a remedy.

The fair construction of the charge of the Judge is, that he did not undertake to decide any fact whatever, but that he merely said to the jury, you are to take it for granted, that there is a want of probable cause until the facts are found by you, and for the purpose of enabling the Court to enter the proper judgment, you may answer as many of the questions propounded, as you can. It has already been shown, that when the facts are found, it is for the Court to determine whether there was, or was not, probable cause. There were the same materials for the decision at the trial, that are now spread out in the volume of evidence reported.

Under the second division, the counsel went into an examination of the testimony to show, that the verdict was fully justified by the evidence. He said, that it was a well settled principle of law, that the jury may infer malice from want of probable cause, and cited in addition to the cases already cited on this point, *Sutton* v. *Johnstone,* 1 *T. R.* 493. Malice is not necessarily a grudge against an individual, but a want of due care, and a reckless design to accomplish an object regardless of the rights of others. In some cases malice is but wilfulness. *Dexter* v. *Spear,* 4 *Mason,* 115; *Roscoe on Ev. Phil. Ed.* 302; *United States* v. *Coffin,* 1 *Sumner,* 394.

Under the third division, that there was no material testimony admitted, which should have been excluded, he said:

1. That if any objection was made to the admission of the testimony in relation to the opening of the letter at *Lincolnville,* the objections were entirely waived. The testimony in relation to the dropping of the package was proper and admissible. One portant question on the trial was, whether *Mitchell* had acted with care or with carelessness. Another was, whether he did or did not overlook the *Bath* decoy package at *Goose River.* On both these subjects, whether the defendant was so careless, as to drop a package without knowing it, was very important; and the relation of his whole conduct on this business was proper.

2. The record kept in obedience to the law at the *Camden* post office, of which another man was postmaster, was proper evidence, and it is wholly immaterial, whether it was in the handwriting of *Merriam* or any other man. It is equally a record in either case. The effect of the evidence when admitted might be greater in the one case, than the other; but its competency would remain the same.

3. It does not appear on the report of the Judge, that any objection was made to the very unimportant testimony in relation to a story of the arrest of *Col. Hall.* If it could have had an influence in any part of the case, it is on that about which the jury did not agree.

4. We cannot assent to the limitation of the subjects of damage made by the counsel for the defendant. The destruction of a man's credit, as a man of property, is a legitimate subject of

damages. 2 *Stark. Ev.* 917. The case in *Burrow*, 1971, *Farmer* v.*Darling*, not only decides, that the loss of credit may be taken into consideration in estimating damages, but that the jury may infer it from other facts proved. 2 *Dane's Ab.* 730, 735. Here the loss of credit, and loss of property in consequence of it, were proved.

5. The act of the magistrates in binding over *Merriam* is re-lied on by the defendant, as showing probable cause. It becomes therefore both pertinent and important to shew, what occasioned the binding over by the magistrates, and the grounds of their de-cision. This could come only from them, or at least not so pro-perly from any other source. The testimony went to show, that the concealment of a material fact by the defendant occasioned the act of the magistrates in the binding over of the defendant. The want of ordinary care in the examination of the mail, just before the arrest, would have an important bearing on the ques-tion of care in examining the mail so soon afterwards.

The decision of the Court upon the case was communicated at the *July Term*, in this county, 1837.

*By the Court.* The testimony of *Albert Reed* and of *Fran-cis Crooker*, in regard to the letter directed to a lady, and opened by the defendant at *Lincolnville*, if not admissible as a part of what was said and done by him on the tour, which led to the prosecution of the plaintiff, was at most irrelevant and immateri-al, and in our judgment affords no sufficient ground for disturb-ing the verdict. It does not appear, that the attention of the Judge was called at the trial to any objection made to a part of *O'Brien's* deposition; and he was not desired to rule upon its admissibility. The idle rumor heard by *O'Brien* of the arrest of *Col. Hall*, was known at the trial to have been false. It was altogether immaterial, and could not have operated to the preju-dice of the defendant. That he entertained suspicions of some postmaster west of *Belfast*, is abundantly proved, and is not con-troverted.

The records of the *Camden* post-office were kept in pursuance of law. They were public records, made by a sworn officer of the government; and were in our opinion legally admissible in

Merriam v. Mitchell.

evidence, to show the transactions of that office. If fraudulently or corruptly kept, they were liable to be controverted, but were entitled to credence, until impugned or impeached.

The Judge instructed the jury, that there was, in point of law, no probable cause for the prosecution; but he submitted certain questions of fact to their consideration, the determination of which was designed to enable the Court, to decide upon the correctness of this instruction. From their finding it appears, that the plaintiff was entirely innocent of the charge, preferred against him. And it does not appear from any evidence in the case, that any ground of suspicion could justly or fairly arise from any part of his conduct. It further appears from the finding of the jury, that the package, supposed to be missing, was in the mail-bag, when searched by the defendant; and it was in proof, that it reached its destination at *Bath*, in due course of mail.

The cause of the prosecution, then, was the fact that the package was overlooked by the defendant. That there must have been some carelessness or defect in the search, is sufficiently apparent. The assurance of the defendant, however strong it may have been, was based upon his own error, mistake or negligence; for such it undoubtedly was; although participated in by others, who assisted in the search. The proceedings before the justice, and subsequently before the grand jury, have no other foundation. We cannot but regard it as too much to hold this to have been probable cause, to justify a prosecution against an innocent and unoffending man, who had given no color for suspicion against him.

Reparation is demanded in such a case, by the plainest dictates of common justice. If a man had prosecuted and imprisoned a faithful servant, on the false charge of purloining an article of value, which had remained locked up in his desk, merely because he had carelessly overlooked it, he could not and ought not to rest satisfied with himself, until he had made restitution. He could not reasonably expect, that the claim of the injured party for damages in a court of justice, could be defeated by the strength of his assurance. If such a doctrine were established by law, innocence might indeed escape the punishment due to guilt, if the error were seasonably discovered, but it would be without indemnity

for losses and expenses growing out of the charge, to say nothing of personal suffering and lacerated feelings. The pretence of error and unintentional mistake would become a cloak, to give impunity to malice, and fraud, and falsehood.

The defendant was manifestly excited in the attempt to bring the business, which had been confided to him, to a successful termination. He knew that one package had been lost at *Lincolnville*. It should have occurred to him, that the decoy package might have been lost in the same manner. It was a fact, in itself calculated to weaken any just conviction, that it was abstracted by the hand of the plaintiff. Nor did the more decisive fact of the arrival of the letter, impair his assurance ; for when apprized of that by *Col. Hall* at *Wiscasset*, he still insisted upon the guilt of the plaintiff.

The jury have expressly found malice. They had a right to do so, from the want of probable cause. To them also was properly submitted all the testimony, bearing upon the plaintiff's claim for damages. It belonged to them to estimate the loss to the plaintiff, arising from the prosecution ; and we perceive no sufficient reason to set aside their verdict upon that, or upon any other ground, taken for the defendant.

*Judgment on the verdict.*