B. Monroe,
3m   4
98   369

CASE.                    **Faris *vs* Starke.**

ERROR TO THE WASHINGTON CIRCUIT.

*Case 3.*                    *Slander.  Pleading.*

*September 9.*    JUDGE MARSHALL delivered the opinion of the Court.

The case stated.
FARIS having caused Starke and two others to be arrested and tried upon a Justice's warrant, on a charge of having broken into his store in the night, and stolen his money, from which the accused were discharged, on trial, by the Justices, Starke brought this action for a malicious prosecution. Faris pleaded a special plea of probable cause, which was traversed by the replication; and the jury having found a verdict for $330 in damages for the plaintiff, and the defendant's motion for a new trial having been overruled, the only question to be considered by this Court is, whether the evidence was sufficient to authorize a verdict for the plaintiff upon the issue joined.

The facts stated and proved.
The main facts alledged in the plea of probable cause, and proved on the trial are: 1st, That the store was entered in the night, by breaking open the window shutter, and the trunk in which Faris' money was deposited taken out, the top cut, the lock prised off, and when it was found, the money gone. 2d, No one slept in the store that night, nor usually, but Starke with his family, occupied the only room adjoining the store, and he not only had an opportunity of knowing that no one staid in the store at night, but also had seen money put in that trunk. 3d, It was proved to have been a moon light night, and that a light was kept all night, in the room occupied by Starke and family, adjoining the store, in consequence of the sickness of a child. 4th, It was proved by many witnesses, that Starke was a man of bad character, and not one states the contrary. 5th, One John Whitton stated to Preston Coulter, a witness, that he, Whitton, with two others, committed the robbery; and on this being communicated to Faris, it was agreed that Coulter should endeavor to ascertain from Whitton who the two

others were, and that other persons, without the knowledge of Whitton, should be so placed as to hear the conversation; which being done, Whitton stated that he and Starke and a third person whom he named, were concerned; that Starke took off the window shutter and directed him to enter and get the trunk, which he did, and Starke took it and cut the top, but not being able to get his hands in from the stiffness of the leather, broke off the lock and took out the money, which he still had, but that Whitton, on going to town on the succeeding Saturday, was to get his share. This statement was communicated by Coulter and two other persons, who heard it, to Faris, and those three persons, all of whom· were witnesses on the trial of this case, say, that from Whitton's statement, and from propositions which Starke had made to them, and which they also communicated to Faris, they believed Starke to have been concerned in the robbery as stated by Whitton, and expressed this belief to Faris, who, on the same or the next day, without waiting, as two of them advised, for the confirmation which Saturday might bring, had the warrant issued and the three persons implicated, arrested and tried. And the endorsement on the warrant, made by the Justices is, that "a majority of the Court being of opinion that the accused, after demanding separate trials, could not be used as testimony against each other, we, therefore, set them at liberty, believing the grounds good to prosecute."

Each of the three witnesses who made these communications to Faris, states that so far as he knew, there was no contrivance, design, or device on the part of any body, to fix the charge on Starke, but that the sole object in seeking the disclosures from Whitton, was to ascertain who was guilty, that he or they might be prosecuted. They, as well as other witnesses, prove also, that up to that time, there was no unfriendly feeling, so far as known, between Starke and Faris. And there is not only no circumstance or statement tending to a contrary inference on this point, but no circumstance or statement from which it can be rationally inferred, that the disclosures of Whitton, assuming them to have been actually made, had been influenced or dictated by any promptings of Faris,

or of which he was cognizant, or that if not actually made, Faris had any reason to doubt their having been made.

That Faris should have been anxious to discover and to prosecute to conviction, the persons who had broken into his store and robbed him of his property, was a natural and legitimate feeling, which, if it displayed itself in action against those only, as to whom there was probable ground for believing them guilty, does not constitute that malice which is the foundation of a suit for a malicious prosecution. The law, in its regard for the public safety, and in its detestation of crime, encourages the use of rational and inoffensive means of detecting the guilty, and of course affords protection to those who, in the fair use of such means, may be led, in good faith, to suspect and even to prosecute those who may turn out to be innocent.

If every man who suffers by the perpetration of a crime, were bound under the penalty of heavy damages, to ascertain before he commences a prosecution, that he has such evidence as will insure a conviction, few prosecutions would be set on foot, the guilty would escape while conclusive evidence was sought for; offences of every grade would, for the most part, go unpunished, and the penal law would be scarcely more than a dead letter. The law, therefore, protects the prosecutor if he have reasonable or probable cause for the prosecution, that is, if he have such ground as would induce a man of ordinary prudence and discretion, to believe in the guilt and to expect the conviction of the person suspected, and if he acts in good faith on such belief and expectation.

*The plea of probable cause to an action for a malicious prosecution may be sustained by proof less than would insure a conviction of plaintiff on the charge made. Such proof as will authorize a man of ordinary prudence to believe, and expect a conviction is sufficient.*

The question then, in this case, is, not whether Starke was actually guilty, nor even whether Whitton actually made the disclosures above stated, of which, however, there is not the slightest ground of doubt; but whether Faris had reasonable ground, from the facts known to him and the communication of Whitton's statement, to believe, and did actually believe that Starke was guilty. If he had ground for such belief, there is no reason to suppose that he did not so believe, or that he acted from any other motive than that belief and the natural desire

of punishing the offender who had injured him; and we perceive no mode of avoiding an affirmative answer to the question which has been stated, unless by supposing, without any authority from the evidence, that Whitton was induced, by some suggestion or practice, of which Faris was cognizant, to fix the charge on Starke, or else by saying that because, as must be assumed, Whitton was a low character, guilty, by his own confession, of the crimes of burglary and theft, his statement implicating Starke in the offence, should have been disregarded by Faris, as not only furnishing in itself, no sufficient ground for belief or action, but as weakening the effect of other suspicious circumstances. That he did in fact make the statements as detailed by the three witnesses, we cannot doubt, upon the evidence as it appears on the record. Nor do we perceive any ground to doubt that these statements were communicated to Faris by the three witnesses, with the expression of their belief in Starke's guilt, or that he believed them. And the supposition that Whitton's charge against Starke was a device induced by Faris or with his privity, being inadmissible, as wholly unauthorized by the evidence, the only ground on which the verdict can stand, is the position, that in consequence of Whitton's character, his statement implicating Starke with himself, was insufficient to authorize belief or action in a man of ordinary prudence and discretion, even in connection with the other circumstances of bad character on the part of Starke, and his peculiar opportunities of knowing that the store was unoccupied, and that money was in the particular trunk that was taken, and the peculiar facility on his part for committing the crime without detection, while in consequence of the night being light, and of a light being kept up in Starke's room, others might have been deterred by the great probability of detection.

We repeat, that the question is not whether all these circumstances amount to proof of guilt, but whether they amount to probable ground of belief and probable cause of prosecution. That all these circumstances existed, including the communication made to Faris by three witnesses, none of whom are directly impeached, and one of

The question is, do the circumstances amount to probable ground of belief and probable cause of prosecution? and it is not essential that

3bm 8
110 871

Burns, &c.
*vs*
Parish.

all the witnesses should be entitled to absolute credence before a jury.

whom only, by his apparent intimacy and connection with Whitton, seems to be subject to any imputation, the jury were bound to find; whether these circumstances being true, amounted to probable cause, is a question of law, and we are decidedly of opinion that they did. For although the mere statement of Whitton, not under oath, would be no legal evidence against Starke, though it was a confession of his own guilt, it was from that circumstance calculated to gain some credence with an ordinary mind. And although the character of Whitton might have forbidden absolute credence to his statement, yet corroborated as it was by the other circumstances, and tending to criminate a bad man, we think it afforded a reasonable ground for bringing him before a tribunal where alone his guilt or innocence could be tested by the strict rules of law and evidence.

Being of opinion therefore, that upon the evidence the verdict is contrary to law, or that the jury have based their verdict upon inferences which the evidence does not authorize, we are brought to the conclusion, that the Court erred in overruling the defendant's motion for a new trial.

Wherefore, the judgment is reversed and the cause remanded, with directions to grant a new trial on payment of costs, and for further proceedings not inconsistent with this opinion.

*Daviess & Hurlan* for plaintiff.

---

Case.

Case 4.

September 9.

The case stated.