## LONG *vs.* RODGERS.

1. The appellate court will not notice any errors except such as are assigned upon the record ; and the practice is to examine such of them only as are insisted on by counsel.

2. A memorandum made by a justice of the peace at the time of the trial of a prosecution before him, showing the judgment which he rendered in the cause, is admissible evidence in a subsequent action instituted by the defendant against the prosecutor, to show the termination of the prosecution.

3. R. and L. were arrested under a warrant issued by a justice of the peace, charging them with having unlawfully taken the prosecutor's daughter from his premises, and detaining her against her will and consent, with intent to carry her out of the State. After the termination of the prosecution, R. brought an action against the prosecutor for a malicious prosecution. To rebut the presumption of malice, the defendant proved his own declarations, made after the abduction of his daughter, but before the issuance of the warrant,

expressing his willingness that L. might marry his daughter. *It was held,*

    1st. That the plaintiff might prove that these declarations were communicated to L., although the defendant was not present when the communication was made.

    2nd. That the plaintiff might also prove, that L. did not detain the young lady against her will and consent.

    3rd. That the plaintiff might also prove, that at the time of the institution of the prosecution, the defendant entertained unfriendly feelings towards the family of which the plaintiff was a member.

4. When the evidence which is objected to by the plaintiff in error is not set out in the bill of exceptions, the appellate court will presume in favor of the correctness of the judgment that the evidence was admissible.

5. The construction of a written affidavit is a question for the determination of the court, and not of the jury.

6. When any portion of a charge requested is illegal, the court may refuse the charge *in toto.*

7. To sustain an action for a malicious prosecution, there must be malice as well as a want of probable cause.

8. There may be facts and circumstances which do not amount to probable cause, but which, being evidence of a want of malice, may justify the acquittal of the defendant upon the ground that there was an entire absence of malice.

9. So on the other hand, an entire absence of actual malice may consist with the absence of every reasonable ground for a belief of the party's guilt; still, in such case the law implies malice, because there is no proof to extenuate the prosecutor's act which has been rashly and indiscreetly done.

10. Although the defendant honestly believed that the plaintiff was guilty of the offence charged, and acted upon such honest conviction, yet if there was a want of probable cause, such belief would not excuse him, unless it was founded on facts and circumstances which would create such a belief in the minds of honest and reasonable men.

11. If no probable cause in fact existed, and the defendant failed to use such precaution as a prudent man would use to ascertain that fact, although he acted entirely without malice, yet in such case malice will be inferred from the want of probable cause.

12. Although the charge given by the court is not in the language in which it is requested, yet if it be a full and fair exposition of the law, and not calculated to mislead the jury, the judgment will not be reversed.

(CHILTON, J., Dissenting, held, that if the charge requested asserts a cor-

rect legal proposition in appropriate terms, and is applicable to the proof, it should be given in the language of the request.)

ERROR to the Circuit Court of Butler. Tried before the Hon. Nathan Cook.

Wesley Rodgers and William Leaird were arrested under a warrant issued by a justice of the peace, at the instance of William Long, charging them with having unlawfully taken from his premises his daughter, and detaining her with intent to carry her out of the limits of the State against her will and consent. After the termination of the prosecution, Rodgers brought this action against Long, to recover damages for the malicious prosecution. To show the termination of the prosecution, the plaintiff offered in evidence a memorandum written at the time of the trial by the justice before whom the trial was had, its execution having been proved by the justice, who also testified that he kept no regular docket. The defendant objected to the admissibility of the paper, but his objection was overruled, and he excepted. The several exceptions, and the charges given and refused, are set out in the opinion of Chilton, J. This case may also be found in 17 Ala. 540.

ELMORE & YANCEY, for plaintiff in error:

1. In an action for a malicious prosecution the plaintiff must show the prosecution to be ended.—1 Chit. Plead. 679; 2. Greenl. Ev. § 452.

2. The memoranda, or paper introduced to prove that fact, should have been rejected as not being a record, nor an office paper, and could only have been used to refresh the memory of the witness.—Vastbinder v. Metcalf, 3 Ala. 100; 1 Stark. on Ev. 154.

3. The conversation between Long and Thagard, relative to the message of Leaird that he would marry Sarah Ann, was introduced by plaintiff in error but for one purpose, viz: as tending to disprove malice in Long in instituting the prosecution.

4. The communication of what Long then said to the Leairds, was irrelevant, as neither tending to prove malice in Long in prosecuting Rogers, nor want of probable cause.

5. The reply of the Leairds, when this conversation was communicated to them by Thagard, was also illegal, as being

but the declarations of persons competent as witnesses, not a part of the *res gestæ*, and irrelevant.—1 Phil. on Ev. p. 169-171.

6. The fact that the language used by the Leairds does not appear in the record, is not fatal to the exception. Nothing that they could have said could elucidate the issue—Long's feeling to the Leairds. If there has been error, the court will presume injury, unless the record shows that no injury accrued to the party thereby.

7. The fact that Leaird did not detain Sarah Ann against her will was irrelevant to the issue, as no such charge had been preferred against Rogers; and even if there had been, this did not tend to prove that Rogers did not detain her against her will.

8. The facts as stated in the first charge asked for by the plaintiff in error, show that Long had preferred no offence against Rogers, for which he could have been examined before a magistrate. This charge did not leave the construction of the affidavit to the jury—the court had already given to the jury the legal effect of the affidavit—and the charge was based upon an admission that such was its legal effect, but that the facts of the case might vary that construction.

9. Two things are indispensable in this action : first, a want of probable cause; second, malice.—Chandler v. McPherson, et al., 11 Ala. 919; 2 Greenl. on Ev. §§ 449-453; Stone v. Crocker, 24 Pick. 81-83. Malice may be inferred from want of probable cause, but this implication may be repelled by proof.—Wood v. Weir, 5 B. Monroe, 546-550. Want of probable cause is but one of the evidences of malice, which can be rebutted by other proof.—Stone v. Crocker, 24 Pick. 81 ; 24 ib. 11.

10. If the jury believed from the evidence that Long, in prosecuting Rogers, acted under an honest belief of his guilt, then one essential ingredient of this action, malice, is wanting, and the second and last charges asked for (numbered 3 and 7) should have been given, without qualification.—Chandler v. McPherson, et al., 11 Ala. 919. If the evidence showed an entire absence of malice in the prosecution, then the plaintiff could not recover ; and the charge asked for (numbered 5 on the record) should have been given; and the charge as given (numbered 6 on the record) was error. It is the duty of the court, when a

proper charge is requested, to give it; and the refusal cannot be justified by afterwards giving one less extensive but free from error.—Maynard & Co. v. Johnson, 4 Ala. 116; Ivers v. Phifer, 11 ib. 535; Cleaveland v. Walker, 11 ib. 1058; Cole v. Spann, 13 ib. 537.

11. Malice is a pure question of fact, for the jury to decide. —2 Greenl. on Ev. § 453. If, however, malice "*must* be inferred" from want of probable cause, it becomes a question of law, which the judge may withdraw from the jury. This view proves that malice is only *inferrable*.—See case cited in note to § 453, of Greenl. on Ev. 2 vol. A charge asked for cannot be abstract, if there is any evidence to warrant the proposition.— Bradford v. Marberry, 12 Ala. 520; Hinton v. Nelms, 13 ib. 222.

12. That in refusing to give the charge asked for by the plaintiff in error, in the terms in which it was asked, the court below erred, though it afterwards gave a charge containing substantially the same principle.—Rives et al. v. McLosky, 5 S. & P., 330; Maynard v. Johnson, 4 Ala. 116; Ivers v. Phifer, 11 ib. 535; Cleavland v. Walker, 11 ib. 1059: Hinton v. Nelms, 13 ib. 222; Cole v. Spann, 13 ib. 537; Phillips v. Beene, 16 ib. 720, Livingston & Gilchrist, v. Maryland Ins. Co., 7 Cranch 505; see p. 544; Noble v. McClintock, 6 W. & Sergt. 58; State of Illinois v. Wilson, 2 Scam., 225; Hill v. Ward, 2 Gillman 285.

It is not a mere question of practice. It involves a principle.—Declaration of rights; Constitution of Ala. Art. 1, § 29. As long as a party uses respectful and appropriate language, and invokes an acknowledged legal principle in his defence, no judge has the right to substitute for him or against him that principle clothed in different phraseology.

As a question of practice, the universal opinion of the bar calls for an adherence to this long and well settled practice, as a protection against the partiality of a presiding judge, and against the misconception of juries.

An adherence to past decisions is a principle which guides every appellate tribunal, unless clearly they are erroneous in principle, and calculated to do injury.

In this case, no injury can accrue by an adherence to the rule.

1. Because the presiding judge has it in his power at all times to explain and qualify any correct legal principle which may be asked, so as to make it conducive to a proper understanding of the case.

2. When, however, a refusal of a correct legal charge is given, and the same principle given in different terms, there is no power in the attorney to correct any misapprehension produced on the jury by the refusal to give the law as asked for his client.

3. The "refusal" to acknowledge the correctness of the legal principle asked for, is the gravamen of the error, and not the mere giving of the same principle in different words. If a court should respond affirmatively to such a charge, and yet give it in its own terms, even this would prevent misconception in the jury. In this case, the court "refused," and therefore did not respond affirmatively.

WATTS, *contra:*

1. Although this is a long bill of exceptions, the facts are not stated in such a way as to show that any error has been committed to the injury of the plaintiff in error. Affirmative error must be shown; this court will not presume it.

2. The first two exceptions are not assigned as error, and of course will not be revised by the court.

3. The admission of the memorandum was proper to show the termination of the prosecution.—See Spear v. Cross, 7 Por. 439; Tayler v. Briggs, 4 Met. 421; Rathman v. Slyer, 7 Watts. 189; Williams v. Woodhous, 3 Dev. 257; Bostick v. Rutherford, 4 Hawks. 83; Bullock v. Ogburn, use, &c. 13 Ala. 346; Kennedy v. Dear, 6 Por. 90.

4. The admission of what Thagard communicated to the Leaird's, (they being charged jointly with the plaintiff below) was the same thing as if communicated to Rogers himself.—See Greenl. Ev. vol. 2, § 453. It was in rebuttal to, or explanation of testimony introduced by defendant below, and for this reason would be admissible, &c. The defendant below proved what he had said to Thagard, and he proved that he requested Thagard to communicate it to the Leaird's. It was then but a conversation between Long and the Leaird's, carried on through the medium of Thagard. But the bill of exceptions does not show what this conversation and acts were, and this court can-

not see therefore, how the plaintiff in error was injured thereby. It was his duty to show this.

5. The proof that the Leairds did not detain defendant's daughter against her will, tended to show, and did show, that there was want of probable cause for the arrest, and was therefore proper. The Leaird's and Rogers were jointly charged in the warrant.—See Long and Rogers at the last term of this court.

6. The proof that there were unfriendly feelings between the family of Rodgers and Long was admissible as a circumstance to show Long's malice.

7. As to the charges; the first charge excepted to is not assigned as error, and cannot be looked to.

8. The first charge asked, (as shown by the bill of exceptions) should not have been given, and was properly refused. The first part of it was objectionable, because it asked the court to leave the construction of the affidavit to the jury.—See Long & Rogers, decided at the last term. If the balance of the charge was correct, for this reason the court might well have refused it; the court was not bound to distinguish between the legal and the illegal. But the latter part of it was illegal also. The advice of a justice of the peace could not protect him.—Williams v. Vanmeter, 8 Miss. 339. The justice was not shown to be learned in the law, and it is not shown that Long communicated to him truly and fully all the facts, and asked his advice thereon, even if it had been proven that he was learned in the law.—See Little v. Blunt, 3 Mason, 102; Williams v. Vanmeter, 8 Miss. 339, *supra.* This court will scarcely presume, in the absence of proof, that a justice of the peace is learned in the law.—See further, Hewlett v. Cruchly, 5 Taunt. 277.

9. As to the next charge. Malice may well be inferred and must be inferred, from an entire want of probable cause.—See 1 Greenl. on Ev. § 18; 2 ib. § 453, the latter part of the section particularly, and authorities cited in the note; see also King v. Root, 7 Conn. 613; Murry v. Long, 1 Wend. 140; Kirksey v. Jones, 7 Ala. 622; Whitehurst v. Ward, 12 Ala. 264; Stark. on Ev. 912; Wills v. Noyes, 12 Pick. 324. Unless the qualification of the charge given be the law of this State, then there is no safety to the community against reckless or pretended ignorance and secret malice.—See Hall v. Hawkins, 5 Humph. 357; Faris v. Starke, 3 B. Monroe, 4; Hickman v.

Griffin, 6 Mis. 37; Merriam v. Mitchell, 1 Shep. 439; (13 Me.;) Wood v. Weir, 5 B. Monroe; Travis v. Smith, 1 Penn. 234; Holburn v. Neal, 4 Dana 121; 19 Wend. 417; Wiggin v. Coffin, 3 Story 1; Fushay v. Ferguson, 2 Den. 617; Rice & Ponder, 7 Iredell 390.

10. The next charge asked and that given are the same in substance as that noticed under the ninth point, and the other charges assigned as error are the same in substance. But these charges asked are abstract; there was no testimony showing that the defendant acted on an honest belief of the charge made against Rodgers. It was clearly shown that as to Rogders, there was not the shadow of probable cause, and it was shown that independent of the entire want of probable cause, there was malice.—See Holmes v. Gayle & Bower, 1 Ala. 517; Stone v. Stone, 1 Ala. 582. The charges asked were objectionable in another point, viz:

11. They asked the court to leave to the jury the question as to whether there was probable cause. This is a mixed question of law and fact; the charge should have asked the court to say whether certain facts did or did not amount to probable cause. The jury must find the facts, and the court determine whether or not there was probable cause.—See Wilder v. Holden, 24 Pick. 11; Stone v. Croker, 24 Pick. 81; Wills v. Noyes, 12 Pick. 324; Carrico v. Meldrum, 1 A. K. Marshall 224; Ives v. Bartholomew, 9 Conn. 309; Stone v. Stevens, 12 ib. 219.

12. In a legal sense any unlawful act done wilfully to the injury of another, is malicious.—See Commonwealth v. Snelling, 15 Pick. 337.

CHILTON, J.—It is well settled, that this court will not notice any errors except such as are assigned upon the record, and the practice is to examine such of them only as are insisted on by the counsel.—Cunningham v. Carpenter & Watson, 10 Ala. 109. The admission of the affidavit and warrant as evidence cannot, under the rule above laid down, be considered by us, the same not being embraced by the assignment of error.—See Stebbins v. Fitch, 1 Stew. 180; Minor's Ala. 11, 23, 35.

2. The cases of Kennedy v. Dear, (6 Por. 90) and Bullock v. Ogburn, use, &c. (13 Ala. 346,) show that there was no error

Long v. Rodgers.

in admitting as evidence to the jury the memorandum made at the time of the trial by the justice of the peace trying the cause, of the judgment which he rendered, the same containing the written evidence of his judgment, as explained by the justice who produced the paper and who presided at the trial.

3. We think there was no error in permitting the plaintiff to prove that what the defendant Long told Thagard as to his willingness for Leaird to marry his daughter, and that he would give him, in the language of the bill of exceptions, " if Leaird would come to him, a permit to marry her," was communicated to Leaird. Long had proved that Thagard had this conversation with him one or two days before suing out the warrant. Now the fact of Long's willingness to the marriage, if communicated to Leaird, conduced to show that the latter was not guilty of a breach of the peace in going off with the girl, but that his object was to marry, not to imprison her, or deprive her otherwise of her liberty; that Long was not present when this communication was made to Leaird makes no difference. If what he said, upon being communicated, tended to justify or to explain the conduct of Leaird in going off with the young lady, to this extent it tended to show that Long was apprised of the real intention of the parties in doing what they did, and that their conduct may have been and probably was influenced by his representations. At all events, it tended to explain the transaction, and to show the want of probable cause, and this, independent of any knowledge on the part of Long whether or not what he told Thagard had been communicated to Leaird, and in this view it was admissible. The plaintiff must prove that the prosecution was instituted maliciously and without probable cause. Malice may be inferred by the jury from the want of probable cause; it may also be proved by the defendant's conduct, and declarations conducing to show that 'the charge he preferred, or the prosecution he incited, was unfounded.—2 Green. on Ev. § 453, and cases cited. These declarations, and the proof of their being communicated, were not, therefore, irrelevant, but properly admitted.

4. It is further objected, that the plaintiff was allowed to prove what William and Henry Leaird said in response to the communication of Thagard, and what passed between Thagard and Leaird at the time. The bill of exceptions does not state what

22

was said or what took place between them on the occasion refer-red to; so that it is obvious we cannot reverse for this supposed error, since we cannot, in the absence of the proof, determine upon its admissibility, or whether its admission injuriously affec-ted the party excepting. Presuming against the bill of excep-tions, we must intend in favor of the correctness of the judg-ment below, that such proof did not injuriously affect the defen-dant, or was part of the *res gestæ*, otherwise he would have set it out in the record for our inspection and reversion.— Holmes v. Gayle & Bower, 1 Ala. 517; Stone v. Stone, use, &c., ib. 582; Pearson v. Howe, 11 ib. 370. The bill of ex-ceptions then fails to show error in the matter of the admission of this proof.

5. It is insisted that the court erred in allowing the plaintiff below to prove that Leaird did not detain defendant's daughter against her will; that such proof was irrelevant, under the is-sue, and did not tend to show that Rogers, the plaintiff, did not so detain her. We do not concur with the counsel in this view. The affidavit made by the defendant Long, and the warrant thereupon issued, preferred a joint charge against the Leairds and Rogers, of unlawfully taking the daughter of the prosecu-tor from his premises, and the affidavit stated that "Henry Leaird intends to carry her out of the limits of this State, against her will and consent." The just and fair construction of the affidavit is, that the parties therein named united in un-lawfully taking the young lady from the premises of her father, that Henry Leaird might carry out his intention of taking her out of the State against her consent. It was then competent for the plaintiff to show, that she remained away from her father willingly, and that no one detained her against her consent. But the evidence is proper in another view. It is unnatural, and op-posed to experience, that the daughter, having been unlawfully taken from her parents' residence against her consent, being at a marriageable age, should choose voluntarily to stay with those who had mistreated her. It is, therefore, a circumstance which the jury may take into consideration, in determining whether she did not willingly go, as the proof conduced to show that she vol-untarily remained away.

6. The next error assigned is, that the plaintiff below was al-lowed to prove that when this prosecution was instituted the de-

Long v. Rodgers.

fendant entertained unfriendly feelings towards the family of which the plaintiff was a member. We think such proof was admissible. In suits for prosecutions of this kind, malice is the gist of the action, and whatever tends to show that the prosecutor was actuated by malicious feelings, or a desire to gratify his revenge or spite, is competent. It may be very weak testimony in the proportion, as it may be rebutted by other proof in the cause showing that the prosecutor was influenced by no improper motive, and that he acted under an honest conviction that the cause for the prosecution really existed; nevertheless the proof may properly go to the jury for what it is worth.

7. We come lastly to the consideration of the charges of the court, to which exceptions were saved, and to the refusal of the court to charge as prayed by the defendant below.

We pass by the first charge given by the court, the same not being assigned for error. As to the charge first asked by the defendant below, it is only necessary to say that it devolved upon the jury the construction of the affidavit in connection with the other evidence. When this cause was before us at a previous term, we held it to be the duty of the court to construe the affidavit when called upon.—See 17 Ala. 540. The court then properly refused to refer its construction to the jury for them to determine, either solely or in connection with the other proof, whether it involved the charge of a felony or a misdemeanor, or no charge cognizable by the criminal law. The written affidavit made by the defendant, Long, speaks for itself. Its legal effect as embodying a charge against the plaintiff below of a violation of the criminal law, is a question which the court, and not the jury, should determine. This portion of the charge being improper, the court very correctly refused the whole, since the court is not required to give a charge, any portion of which is illegal, but should refuse the whole, unless the judge chooses to separate the legal from the objectionable portion of it, which he may, but is not bound to do.—Rives & Mather v. McLosky & Hagan, 5 S. & P. 330; Carmichael v. Brooks, 9 Por. 330, and cases cited on page 334.

8. The defendant asked the court for several specific charges, which the court refused to give without superadding a qualification to each, but which, (with the exception of one,) we think, upon a fair construction of the bill of exceptions, were given

Long v. Rodgers.

with the qualification, of which we will hereafter speak more particularly.

The only charge which was not given in the terms asked, but with a qualification, is as follows: That "if the jury should believe there was an entire want of probable cause, yet if they believe from the proof that the defendant acted entirely without malice, then he was not liable in this action." This charge the court refused in the terms asked, but charged the jury "that if there was no probable cause, and the defendant did not use the precaution which a prudent man would use to ascertain that fact, that then malice would be inferred from such failure on his part."

It is well settled, that to sustain this action, there must be malice, as well as a want of probable cause. But when the law speaks of malice in this connection, it does not imply that there should be actual ill will, hatred, or a desire to injure the party prosecuted through revenge or spite. If the prosecutor, in the entire absence of any probable or reasonable grounds justifying even a suspicion of the party's guilt, sets the prosecution on foot, the legal implication of malice necessarily arises, but at the same time there may be, on the other hand, circumstances of suspicion, which, in judgment of law, would not amount to probable cause, and which nevertheless would fully justify the conclusion on the part of the jury trying the cause, that there was an entire absence of malice. Otherwise, it would be sufficient in all cases to prove a want of probable cause to entitle the party to recover, and the legal presumption of malice which arises out of the want of such probable cause would thus be made conclusive. Lest we should be misunderstood, we repeat, there may be facts and circumstances which do not amount to probable cause, but which, being evidence of a want of malice, may justify the acquittal of the defendant upon the ground that there was an entire absence of malice. So, on the other hand, an entire absence of actual malice may consist with the absence of every reasonable ground for the belief of the party's guilt; still in such case, the law implies malice, because there is no proof to extenuate the party's act, which has been rashly and indiscreetly done.—3 Starkie's R. 389.

Now, in the case before us, as in all cases, we should refer the charge asked as well as the charge given, to the facts. Thus

Long v. Rodgers.

considered, I think the charge refused was proper, and should have been given. There was some evidence furnished by the circumstances, conducing to show that the prosecutor was actuated by a *bona fide* desire to bring those whom he honestly believed to have been guilty of a violation of the criminal law, to the bar of justice. As applicable to this state of the proof, the defendant below asked the court to charge that although there might be an entire absence of probable cause, yet, if there was an entire absence of malice, the party must be acquitted. The charge was general, but nevertheless, when taken in connection with the proof, was correct in point of law, and I think should have been given as it was requested. If the court deemed it too general, and desired to restrict its effect, and to limit it, another explanatory charge might well have been given, but this, in my judgment, should not have been refused. My brethren are of opinion, that although the charge given in lieu of this operated to restrict it, yet if it was a restriction which, when taken in connection with the evidence in the cause, presented the law of the case in a correct and clear light before the jury, and in a manner calculated to prevent any misconception of the law on their part, which might result from the general nature of the charge refused, they will not reverse for such refusal. They think the charge given embraced the substance of so much of the charge demanded, as placed the law of the case more properly before the jury. They concede the correctness, however, of the charge which the court refused to give in the terms asked, and justify its exclusion from the jury, for reasons which they will assign.

For myself, I cannot consent to depart from a practice which has long been acquiesced in, and which is as firmly settled by the repeated decisions of this court, as a question of practice can well be settled. Awarding to the juries of the country all the acumen which may be claimed for them, and to the judges of the primary courts all the legal learning necessary to qualify them for the proper discharge of the high responsibilities devolved upon them in the administration of the law, still it is not assuming too much to say, that juries may labor under very erroneous impressions in regard to the law, conceived from the *refusal* of the court to give a charge which is applicable to the proof, and which asserts a correct legal proposition in appropriate terms. Such refusal stamps the charge with the idea of illegality, or im-

propriety of some sort, and, though it may afterwards be given substantially, devolves upon the jury the process of reasoning, and inference, to ascertain whether that given is an equivalent for that refused, and after all, leaves the question still to be solved, why the refusal?

The principle of the rule was asserted by this court under its first organization, in 5 Stew. & Por. 330; and subsequent decisions have applied it more stringently, which is some evidence to my mind of its utility.—See Maynard v. Johnson, 4 Ala. 116; Ivey v. Phifer, 11 ib. 535; Clealand v. Walker, ib. 1059; Hinton v. Nelms, 13 ib. 222; Cole v. Spann, ib. 537; Phillips v. Beene, 16 ib. 720.

It is a maxim which I think we ought not to violate, "that the practice of the court is the law of the court."—3 Bulst. 53; Broom's Legal Maxims, 57; Bonill v. Wood, 2 M. & S. 25; 15 East. 226; 11 Mees. & Wels. 690. I can see no reason for departing from this established practice. It but affords to counsel who study the law of their case an opportunity of presenting it before the jury, couched in such terms as in their opinion will give it effect, and leaves the court perfectly free to give other, and further charges, explanatory of those given. If the court assents to the legal proposition contained in the charge, the jury should be so informed, and the charge should not be refused. If the language in which the charge is couched is inapt, or otherwise improper, (I say nothing of gross language, which I am not allowed to presume any counsel will use,) this should furnish no excuse for refusing the charge, thereby impressing the jury with the belief, that the charge was denied because it failed to assert a correct legal proposition. The charge as to the law should be given, and the language corrected.

But I shall add no more on this point, and will turn to the consideration of the qualifications superadded to the charges asked.

9. The court, by the qualifications given, with the charges prayed, substantially asserted the law to be—1. That although the defendant honestly believed the plaintiff was guilty of the offence charged, and acted upon such honest conviction, yet if there was a want of probable cause, such belief would not excuse the defendant, unless "it was founded on facts and circumstances which would create such belief in the minds of honest

Long v. Rodgers.

and reasonable men." 2. So neither should the defendant be acquitted although he acted entirely without malice, if no probable cause in fact existed, and he failed to use such precaution as a prudent man would use to ascertain that fact, but that in such case malice would be inferred from the want of probable cause.

In Chandler v. McPherson, *et al.*, (11 Ala. 916,) the court, after an examination of numerous authorities, say : " It may be safely affirmed as a general rule, that although the defendant in an action for malicious prosecution may not be able to show a probable cause for prosecuting the plaintiff, or the plaintiff may prove a state of facts from which the want of it is inferrable, yet if the defendant acted under an honest belief that the plaintiff was guilty of the offence for which he was charged, no recovery can be had against him."

As to the qualification when applied to the first charge, we are not prepared to say that it is wrong, notwithstanding the charge itself is in the language of the decision just above referred to. That case lays down the general rule, but the Chief Justice does not inquire as to the qualifications to which it should be subject in its application to cases differently situated from that before the court. It will never do, as we have above intimated, to hold that a belief of the plaintiff's guilt, founded upon the caprice, prejudice, or the idle dreams of the prosecutor, in the absence of all facts and circumstances which would generate such suspicion of guilt in the mind of a reasonably prudent man, will exonerate the party from liability. The books abound with cases to the contrary. I will not swell this opinion by commenting on them, but will content myself by merely citing them.— See Brooks v. Warwick, 2 Starkie's R. 389, per Lord Ellenborough; S. C. 3 Eng. Com. Law R. 396; Rice v. Ponder, 7 Iredell's L. R. 390—396, per Ruffin, C. J.; Foshay v. Ferguson, 2 Denio, 617, per Bronson, C. J.; Travis v. Smith, 1 Penn. State R. 234—237, per Sergeant, J.; Faris v. Starke, 3 B. Mon. 4; Wood v. Weir & Sayre, 5 ib. 544; per Justice Story, in Wiggin v. Coffin, 3 Story's 1—7; 13 Me. 439; 6 Mo. 37. To these many other cases might be added. Indeed, we do not understand the case of Chandler v. McPherson to hold a different doctrine. The prosecutor, it is there said, must have an *honest* belief of the party's guilt, which would not imply a belief

founded upon insufficient evidence, although that evidence might not in legal contemplation amount to probable cause.

As to the application of the qualification to the general charge, which assumes the prosecutor's innocence if he acted without malice, we think the court did not err in its opinion of the law. The remarks applicable to the prosecutor's belief and the cases cited equally apply to this charge. If the prosecutor acts wantonly, rashly or wickedly in charging another who is innocent, he is presumed in law to act maliciously, and justly chargeable with the consequences. On the other hand, as absolute certainty is not attainable in human affairs, and we are daily called upon even in our most important concerns, to act upon probabilities, the law, which is adapted to the nature and position of man, exacts no more from one who institutes criminal proceedings, than that reasonable and prudential caution which the safety of others demands, and where that exists, does not make him responsible for the event.—Per Sergeant J. in Travis v. Smith, 1 Penn. State R. 237. It is the policy of the law to encourage the use of rational, inoffensive means of detecting the guilty, and hence it affords protection to those who, in the fair use of such means, are led to suspect and even to prosecute, in good faith, those who may turn out to be innocent.—Per Marshall, J., 3 B. Mon. 6.

The court are unanimous in the conclusion that the charges given correctly laid down the law for the guidance of the jury. The only difference of opinion is, that the charges asked and refused, being conceded to be correct, I think should have been given, *as asked*, according to our previous practice. But my brethren being of a different opinion, the judgment must be affirmed.

(NOTE.) A re-hearing of this case was granted on the point of practice raised by the refusal of the court below, to give a charge in the language requested by the counsel, and the following opinions were afterwards delivered.

DARGAN, C. J.—In the case of Cole v. Spann, 13 Ala. 537, I expressed my opinion upon the question submitted in this case for re-argument. I there said, if the charge given is not in the language of the charge requested, yet if it be a full and a fair exposition of the law, not calculated to mislead the jury, the judgment ought not to be reversed. I have with due respect

to the previous decisions of this court, and a proper regard for what I suppose to be the opinion of a majority of the bar, re-examined the opinion I then expressed, and I may add with a desire to be convinced that I was then in error; my reflections and examination, however, have ended in satisfying my mind that the opinion there expressed is correct, and I am constrained from a sense of duty to adhere to it.

The instructions of the court to the jury ought always to reach the substance and justice of the case, according to the rights of the parties as ascertained by law; when this is done, the duty of the court is performed, and the language employed, if calculated to explain the law, and enable the jury to apply the principles that govern the case, cannot in reason or justice be important or afford just ground for reversal.

I admit that a judge should be cautious in departing from the language of a request for instructions, and should never employ different language in directing a jury as to the law, unless the language which he employs is equally as clear and explicit as the language in which he is requested to give the instructions. But to hold that in all cases he is bound to use the precise language in which he is requested to give the charge, will often lead to the reversal of judgments, when the justice of the case has been reached, and no injury done to the party complaining of error. Yea, even when the language employed by the court is calculated to place the rights or the defence of the party in a more clear and favorable point of view, than the language in which the charge was requested, still we should have to reverse the judgment, not indeed, because of any error in law, or because any injury was done to the party excepting, but because the court did not use the language employed by the counsel in requesting the charge to be given.

In the case of Rives & Mather v. McLosky, 5 Stew. & Por. 330, it was held, that if a party in point of law is entitled to a particular instruction, and the court refuse to give it upon request, it is error, although afterwards the court should give a direction that by argument and inference may be pressed to the same extent. This is the language of Judge Story in the case of Livingston, et al. v. The Maryland Insurance Company, 7 Cranch, 544. I fully approve of the principle of practice recognized by these cases, and think that when the court departs

from the language employed in making the request, it should be certain that the language employed in giving the charge is equally as appropriate, plain and simple, not calculated to mislead the jury, or to impress upon their mind that the principle of law requested to be given is denied by the court. But when the charge as given is clear and appropriate to the evidence, and places the case in a proper light before the jury, there can be no error, and the judgment should not be reversed.

Within the last few years, this court has on several occasions announced the stringent rule, that the charge given must be in the language requested, and if not it is error, although the same principle of law is announced in equivalent terms. But I do not believe that any other State in the Union has adopted or recognized such a rule of practice, and we should look in vain into the English cases to find authority to support such a proposition. I cannot think that it will be productive of any good to adhere to such a rule of practice. It would be to adhere to language at the sacrifice of principle and substance. It is true, I would not consent to depart from decisions, though erroneous, if such decisions were calculated to become the source of title to property, or even a rule by which the acts and conduct of men may have been governed in their business transactions; but when such decisions can be productive of no good, and no injury can result from overruling them, and returning to correct principles, I feel fully justified in doing it, believing that benefit will result from overturning them, whilst an adherence to them would be productive of injury alone.

As I am clear in the opinion that the recent decisions of this court upon this question are erroneous, and that the principle of practice which they sanction has been, and will continue to be productive of more injury than benefit, it becomes my duty to aid in overruling them.

PARSONS, J.—The statute does not require the court to charge in the language proposed by the counsel; nor have we been referred to a single English or American case which goes that length, with the exception of some recent cases in this court. In my judgment the latter are very inconsistent with the general disposition of this court, which has probably gone even too far, to require nothing very nice or technical in pleading or practice,

Long v. Rodgers.

and very inconsistent also with the established rule, not to reverse even for an admitted error, unless it might be injurious. A practice that requires the court to charge in the identical language proposed from the bar, if free from legal error, is in my opinion a bad practice, because I think it must lead to novel questions and to uncertainty in judicial proceedings, without affording any substantial benefit. All that ought to be required of the court, is to charge the law of the case. But if it must adopt the language proposed, that language may in the opinion of the court be ill adapted to the understanding of the jury, and calculated to confuse or to mislead them, although upon close and deliberate examination, it might be free from legal error or objection. Indeed, the judge may not, in the haste with which business is often done on the circuits, himself be able clearly to comprehend the language proposed to him. The language in which he is called upon to charge the jury, may be gross or offensive, and yet free from legal error. What in such cases is the judge to do? It will, perhaps, be conceded that in each of the cases supposed the language may be so exceptionable, that the judge may refuse to employ it in his charge. Then let us suppose that he gives substantially the charge desired, but in his own language, refusing the language proposed, and that this is assigned here as error. What is the question before us, but one of "empty sound?" Shall we reverse? If so, it is for no injury, and I must think for no error. But if we reverse for a difference of mere words, we act rather as critics of language, than as a court of errors in matters of law. For example, if the judge should decline the language because it was gross or offensive, then the question for us would be, is it so gross or offensive, that the judge should be excused for declining it? It is evident that such a practice may lead to such questions, and that it will introduce new subjects of judicial investigation, and increase the uncertainty of results. The practice from which this court lately departed, was a tried and safe practice, and I concur with the Chief Justice in a disposition to return to it. There can be no injury to any one in doing so. At most, a party can lose the chance of a reversal for a mere difference of words. If there is a real error shown by his bill of exceptions, of that he will have the full advantage, notwithstanding our return to the former practice.