## Davis v. Calvin.

(Decided April 21, 1911.)

### Appeal from Hardin Circuit Court.

1. Malicious Prosecution—Action for Damages—Sufficiency of Evidence.—In an action for damages for malicious prosecution, evidence examined and held to support the find of the jury in favor of defendant.

2. Evidence—Competency—Prejudicial Error—While it was not proper to admit testimony of the bad reputation of the plaintiff's brother, yet where the witnesses included plaintiff in their testimony, and other witnesses testified to the bad reputation of plaintiff, the admission of such incompetent evidence is not prejudicial.

3. Probable Cause—Instructions—An instruction to the effect that there was probable cause for the prosecution of defendant, when the prosecution was instituted, believed and had such grounds as would induce a man of ordinary prudence to believe that plaintiff by himself or in conjunction with others, had taken defendant's hog and converted it to his or their own use, fairly presented the law of the case.

IRWIN & IRWIN, W. A. BARRY and H. L. JAMES for appellant.

L. A. FAUREST and R. L. STITH for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Appellant Ed. Davis brought this action against L. D. Calvin to recover damages for malicious prosecution. A jury found for the defendant, and Davis appeals.

Appellant relies upon the following grounds for reversal: (1) The verdict is contrary to the evidence. (2) The admission of incompetent testimony. (3) Error of the court in defining "probable cause."

On Friday, January 19, 1906, appellee lost a fine Poland China sow. The sow was marked by a curl on her hip. That night appellee discovered that the sow was gone. She was a gilt, and was "running" at the time. Appellee tracked the sow from his pasture out to the pike. Upon reaching the pike, he found that her tracks indicated that she had gone down the pike in the opposite direction from appellant's place. Appellee went down the pike and inquired of various parties if they had seen the sow. Finally he learned that Truman Howlett had seen the sow in the road; that one of the men with him struck at the sow with a whip and that she turned around. Afterwards, he went to Mossbarger's store. There he saw Nath Bogard, his brother, and several others. He described the hog to them. Nath Bogard said he certainly saw it in Ed. Davis' lot the day before, and that he told Davis that hog would do to "chaw on" as he commenced to scratch it, and Davis said that was one he had not killed yet. Upon securing this information, appellee went to appellant's place with Nath Bogard and his brother; saw Ed. Davis, and got him to call his hogs. Davis said his hogs were not all there; they were scattered everywhere. Appellee asked Bogard, in the presence of Davis, if any of the hogs he then saw filled the description of the one he saw there the day before. Bogard said "no." At the same time appellee examined Davis' meat house and his premises. Upon leaving he told Davis he would return the next morning and examine all the hogs he had. Appellee went back the next morning with his son-in-law. The hogs were called up. Appellant asked Davis if that was all the hogs he had. Davis said "all but a spotted sow." Appellee told Davis he was not looking for a spotted sow. Appellee then went after Bogard, who returned, and in answer to a question from appellee, stated that the hog he had seen there was not among the hogs he then saw. Jim Floyd Davis told appellee that his hog was certainly killed there at Ed. Davis' place; that he heard it squeal and saw the blood at the barn, and tracked it on up to his gate; saw several men in the lot there; among them was John Hines. Jim Floyd Davis' wife also told appellee that she "heard the hog struck in Davis' lot and squeal like it was its last." She also told appellee that Ed. Davis' wife, a day or two after the hog was missing, brought some fresh meat to her house. Mrs. Addie Hines, wife of John Hines, told appellee her husband was out hauling, and had brought a

hog's head in there some time in the night, and that she had received it and ate it. She also said that they found out the next morning that it was the hog appellee was inquiring for, and her husband told her not to say anything about it. She also stated that her husband told her he got it at Ed. Davis', and he stayed there until the hog was hung up. While at Davis' the appellee saw some black hogs' hair which looked like it had been scalded.

Appellee's feelings towards appellant were not friendly. He went before the grand jury and instigated the prosecution. He also employed an attorney to assist in the prosecution. Upon the trial, appellant was acquitted.

The testimony for the appellant was to the effect that he had never taken or killed appellee's hog, and knew nothing of its whereabouts. Several witnesses testified that appellant's reputation for truth and veracity was bad; while certain others testified that the reputation of the Davis boys, including appellant, was bad.

It is earnestly insisted by appellant that the tracks of the hog showed that it was going in the opposite direction from appellant's house, and that, in spite of this fact, appellee went to appellant's house to look for the hog; appellant did not attempt to conceal anything from him, but permitted him to examine all of his hogs and inspect his premises; that under these circumstances appellee had no reasonable grounds upon which to base the conclusion that appellant had killed the hog and appropriated it to his own use. It must be remembered, however, that, if appellee's statement be true, he was informed that the hog had turned around. He was also told that the hog had been seen in Davis' lot. During the night a hog was killed on Davis' premises, although Davis had killed his hogs some six or seven days before. Nath Bogard claimed that Davis said the hog Bogard saw there was one he had not killed yet. John Hines brought a hog's head to his wife that night; said he had gotten it at Ed. Davis', and told his wife not to say anything about it. While it may be true, that appellant had nothing to do with the killing of appellee's hog, yet the question of probable cause was one for the jury, and we can not say, either that there was no evidence to justify the submission of the case, or that the finding of the jury was flagrantly against the evidence.

While the court should not have admitted evidence of the bad reputation of the Davis brothers, still, as the witnesses included appellant along with his brothers, and

there were several other witnesses who testified alone to appellant's bad reputation, we conclude that the error complained of was not prejudicial.

The court, in instruction six, defined "probable cause" as follows:

"The court instructs the jury that there was probable cause for the prosecution referred to, if defendant, when the prosecution was instituted, believed, and had such grounds as would induce a man of ordinary prudence to believe, that plaintiff, by himself or in conjunction with others, had taken defendant's hog and converted it to his or their own use."

In this connection we are referred to the case of Farris v. Starke, 3 B. Mon. 4, and Mesker v. McCourt, 19 Ky. Law Rep. 1897, wherein the court laid down the rule that proper cause existed, if the defendant had such grounds as would induce a man of ordinary prudence and discretion to believe in the guilt and expect the conviction of the accused, and if he acted in good faith upon such belief and expectation. This, in our opinion, is only another way of expressing the same idea contained in the instruction given by the trial court: for, if the defendant in an action for malicious prosecution has such grounds as would induce a man of ordinary prudence to believe that the plaintiff had taken his hog and converted it to his own use, he would also have the right to expect a conviction. Furthermore, the instruction complained of follows, substantially, the rule laid down in the recent case of Ahrens & Ott Manufacturing Co. v. Hoeher, 106 Ky. 692, and, in our opinion, fairly presented the law of the case.

Finding no error in the record prejudicial to the substantial rights of the appellant, we conclude that the judgment must be affirmed, and it is so ordered.